ARTHUR LAWRENCE SMITH, APPELLEE, V. BANKERS NATIONAL LIFE INSURANCE COMPANY, APPELLANT.

FILED MARCH 6, 1936. No. 29446.

*Chambers & Holland,* for appellant.

*Baylor & Tou Velle* and *George A. Healey, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

CHASE, District Judge.

This is a suit in equity by which the appellee seeks to compel the appellant to reinstate a lapsed policy of life insurance. It appears that on February 1, 1923, the appellant issued a policy of life insurance to the appellee which it termed "Twenty Payment Nineteen Year Term Policy Participating," with an annual stipulated premium of $1,366.50, in which it agreed to pay to the beneficiaries of the appellee, on his death, and within 19 years from the date thereof, the sum of $50,000. The contract contained the further provisions: To allow the assured to exercise options at the end of 19 years from February 1, 1923, consisting of cash in the sum of $16,288.80, in addition to all dividends; or a paid-up participating life policy for $25,000; to allow the insured to convert the policy into any other form of whole life or endowment insurance, then issued by the company, at the regular premium rate of his then age, of the desired character of insurance; and to reinstate the policy, in case of default in the payment of any premium, at any time within 19 years from the date thereof, upon written application to the company at its home office, with evidence of insurability satisfactory to the company, upon the payment of all premiums that would have been paid in the intervening time of default, with interest thereon at the rate of 6 per cent. per annum from date of payment thereof, with a like amount of interest on any indebtedness existing at the time of default.

The appellee paid five annual premiums, but on February

1, 1928, and February 1, 1929, the appellee defaulted in the payment of his annual premiums. In May, 1929, while he was in default of the payment of premiums, he made a written application on the forms provided by appellant for reinstatement of the policy, and tendered in writing evidence of insurable interest and good health; and on May 27, 1929, the appellant refused to accept the tender of payment, and refused to reinstate said policy of insurance. Upon such refusal, appellee brought this action to compel the reinstatement under the terms of the policy. The trial court found generally in favor of the appellee and against the appellant, and that the appellee was entitled to reinstatement under this policy as of the date May 27, 1929. To effect a reversal of the findings of the trial court the appellant presents the record to this court for review.

In order to properly dispose of the issues presented, we must determine whether the appellee complied with his part of the contract sufficient to entitle him to reinstatement. It will be observed that the appellee, being in default in the payment of any premiums for a period less than 19 years, is required to do two things as a condition precedent to his reinstatement: First, to pay the premiums that are required to be paid during the time of default, and other dues and charges against him; and, second, to furnish, upon written application at the home office of the company, evidence of insurability satisfactory to the company.

The evidence shows that the appellee mailed to the company his check for the payment of the premiums accruing while in default, and that the company returned his check accompanied by the following letter:

"Bankers National Life Insurance Company,
"Kansas City, Mo.                                    May 27, 1929.
"Dr. Arthur L. Smith,
"1001 Federal Trust Bldg.,
"Lincoln, Nebraska.
"Dear Dr. Smith:

"We regret very much that the Under-writing Committee has not acted favorably on your application for reinstate-

ment of Policy 1-B, and accordingly we are enclosing with this letter your check for $2,896.98.

"Very truly yours,

"E. H. Hardebeck,

"Secretary & Actuary."

No reasons for refusal to reinstate the appellee's policy are stated in the letter. The company having made no objection to the insufficiency of the check, either in amount or method of payment, we conclude that the evidence is sufficient to establish the proper tender of payment of premiums and other charges required by the policy.

Upon the question of whether the appellee tendered satisfactory evidence of insurability, the record discloses that the parties entered into a stipulation of fact in which it is agreed that in May, 1929, the appellee tendered to appellant in writing, upon forms furnished by appellant, evidence of appellee's insurable interest and good health, and that on May 27, 1929, the appellant refused to accept tender of payment, and refused to reinstate the policy. The terms of the policy require the appellee to furnish evidence of insurability. The stipulation agrees that he has furnished evidence of insurable interest and good health. The admission of fact that the appellant tendered evidence of his good health in his application for reinstatement is sufficient to satisfy the provision of the policy requiring the showing of insurability. Upon this point the evidence is corroborated by inferences of great evidentiary value that arise from the proved facts. The application for reinstatement was made in May, 1929. Nearly five years elapsed between the time of the application for reinstatement and the trial of the cause in the lower court. Appellee is a practicing physician, and the record shows that during all that period he carried on the general practice of his profession, and that he was in good health at the time of making the application and was in good health at the time of the trial. The logical inference to be drawn from these established facts is that he was in good health and possessed of insurability in May, 1929, when the application for reinstatement was made.

The decisions are numerous that logical inferences which may be drawn from existing proved facts possess a very strong evidentiary value, and oftentimes are allowed to overcome positive testimony. In the case of *Womack v. Horsley*, 178 Ia. 1079, in discussing the value of inferences, the court said: "Inferences are inevitable in all trials of disputed fact, and are usually important links in the chain of proof. It is earnestly argued that inference should never be permitted to overcome positive and direct testimony. No authority is cited for such rule. It is safe to say that there is no authority for it. Appropriate inferences from proved facts are not a low order of evidence. Whether they should be permitted to overcome positive and direct testimony or not depends, in every case, upon the relative strength of the one or the other. The very credibility of direct evidence may be destroyed by the force of irresistible inferences."

The proof is ample that the insured furnished evidence of his insurability at the time of his application for reinstatement. The appellant argues that if the court reinstated the policy it should have been reinstated as of the date of the decree instead of May 27, 1929, that the decree reinstating the policy was, in fact, an idle judicial gesture, and that when the reinstatement occurred the insured was still in default several premium instalments. Some force to this argument might be recognized, were it not for the fact that one of the company's agreements with the insured is to convert the policy into a different class of insurance by complying with the terms thereof at his then age. While any rights he may have under this provision of the policy are not presented on this appeal, and are not decided here, the fact that the policy contains such a provision sufficiently answers the argument as to the futility of the decree.

Appellant also contends that the trial court erred in allowing appellee until October 1, 1934, in which to tender to the appellant the amount which appellee was in arrears of premiums and other charges. It satisfactorily appears that the appellee tendered his check at the time he made his ap-

plication for reinstatement to the company, and the company refused the reinstatement, but made no claim that the check was insufficient as to the amount, or the method of payment. By the refusal to reinstate appellee's policy under such conditions, the company waived its rights to object for the sufficiency of the check constituting a tender of payment. *Bundy v. Wills*, 88 Neb. 554, 130 N. W. 273. The necessary steps to constitute sufficient tender are to be determined by the law and the facts of the particular case. The refusal to reinstate the policy, as shown by the record, made it unnecessary for the appellee to make any subsequent tender of payment, and the provision of the decree, in the light of the existing circumstances, fixing the time of payment is not unreasonable.

Complaint is made that the trial court erred in permitting the appellee to testify, over objection, as to a conversation had with one of the directors of the company outside the office of the company. The law is well settled that directors of a corporation, as such, have the authority to bind it only when they act collectively as a board. They are not *ex officio* agents of a corporation and their individual declarations and admissions, when not acting as a board, are not binding on the corporation, nor admissible in evidence against it. 3 Fletcher, Cyclopedia Corporations, sec. 2168. This testimony seems to have been received as evidence of waiver of the provision requiring proof of insurability. The record discloses the proof on this point to be ample outside of any testimony of the director; therefore, the reception of such evidence would be, at the most, error without prejudice.

The trial court having granted the appellee until October 1, 1934, within which to make payment of the premium of $2,896.98, which is the amount found by the court to have been due on May 27, 1929, when the application for reinstatement was rejected, the appellee is herein allowed 20 days after the time for rehearing has expired, in which to pay the sum of $2,896.98, and allowed 30 days thereafter

to exercise options provided for in the decree of the trial court.

We are convinced from a careful examination of the record that the decree of the trial court is correct, and it is, therefore,

AFFIRMED.